

FILED
U.S. DISTRICT COURT
MIDDLE GEORGIA
ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| IN RE CONSOLIDATED "NON-FILING INSURANCE" FEE LITIGATION | ) ) ) ) ) | |
| ELAINE JORDAN, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | **MDL 1130** |
| v. | ) ) | |
| AVCO FINANCIAL SERVICES OF GEORGIA, et al., | ) ) ) | **4:95-CV-52-WDO** |
| Defendants. | ) ) ) ) | |
| LESHONDA HAZZARD, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| KIMBRELL FURNITURE COMPANY OF GEORGIA, INC., KIMBRELL'S FURNITURE COMPANY, INC., KIMBRELL'S, INC., and FURNITURE DISTRIBUTORS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

After a hearing, in an Order entered on $\underline{\smash{May \ 17}}$ , 2005, this Court gave final approval to the settlement of the above captioned action.  In that same Order, the Court granted the application of Class Counsel for an award of $\underline{\smash{\$60,624.12}}$ in reasonable attorneys' fees and for the reimbursement of expenses.  There are no objections to the settlement or to the application for an award of attorneys' fees and reimbursable expenses.[1]   In this companion Order, the Court gives its reasons for granting Class Counsel's application.  See Camden I Condominium Assoc. v. Dunkle, 946 F.2d 768 (11th Cir. 1991).

To summarize, the amount applied for is well within the range of fees customarily awarded in actions such as this one.  In fact, so as to facilitate settlement and maximize class recovery, Class Counsel has decided to waive a significant portion of any attorneys' fees, seeking reimbursement of their expenses but seeking fees only for the attorney who originally was retained by the named Plaintiff and who associated Class Counsel.  The requested amount is being awarded here because: the result achieved for the Plaintiff

---

[1] One individual returned a claim form indicating his desire to participate in the recovery, and at the same time, arguably objected to the procedures in place whereby class members could seek recovery for multiple transactions. The Court has been advised during the hearing that these procedures have been altered so as to permit the recovery for multiple transactions without the requirement of certain documents.  This alteration, which the Court finds to be in the best interests of the Plaintiff Class, moots the only arguable objection that was submitted.

Class is a good one; the risks attendant to this litigation were and, pending the resolution of any appeal from this Court's Orders, remain great; Class Counsel committed its resources to this litigation to the preclusion of other employment; Class Counsel litigated this case for almost ten years, and it involved voluminous discovery, an intense motions practice, and challenging appeals; the result could not have been achieved absent Class Counsel's skill, experience and ability; there are no "opt-outs" and only one even arguable objection to the settlement, and that is to the method of making claim to multiple payments; and Class Counsel successfully achieved advantageous economies of scale through this litigation so as to correct an industry wide problem to the benefit of the Defendants' customers and to persons purchasing consumer goods on credit nationwide.

In the Eleventh Circuit, federal courts base the propriety and amount of any attorneys' fees award in a class action on the total value of the settlement in a case in which a common fund has been established. See Camden I Condominium, supra. In Camden, the Eleventh Circuit established a benchmark for such awards and identified various factors a trial court might properly consider in determining attorneys' fees. See also Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974) (listing factors).

The Court finds and concludes that the Johnson and Camden factors support Class Counsel's Application, and therefore, this Court awards

3

$ 60,624.12 in attorneys' fees to Class Counsel. In so concluding, the Court has considered the evidence presented by affidavit and/or declaration and the argument of counsel.

The majority of common fund awards fall between 20% and 30% of the fund. Camden I, 946 F.2d at 774. The "benchmark" of any award is 25% of the common fund. Id at 775. See also Manual for Complex Litigation (Third) (1995) at 189; id. at § 24-11 n. 572 (noting that some courts decrease the percentage as the size of the fund increases while other courts increase the percentage awarded as attorneys' fees as the amount of the settlement increases so as to provide incentives for Class Counsel to obtain early settlements and optimum results for the class, citing In re American Continental Corp., Lincoln Savings & Loan Securities Litigation, MDL-834 (D. Ariz. July 25, 1990)). The primary determinant of the fee is the measure of the recovery achieved by counsel, that is, the benefit provided to the class. Camden I, 946 F.2d at 773 and 774-75.

In addition to the result, the other factors listed in Johnson remain relevant in evaluating, setting and reviewing percentage fee awards in common fund cases. Camden I, 946 F.2d at 775. The Johnson factors include:

1)     the time and labor required;

2)     the novelty and difficulty of the questions involved;

3)   the skill requisite to perform the legal services properly;

4)   the preclusion of other employment by the attorney due to the
     acceptance of the case;

5)   the customary fee;

6)   whether the fee is fixed or contingent;

7)   time limitations imposed by the client or the circumstances;

8)   the amount involved and the results obtained;

9)   the experience, reputation and ability of the attorneys;

10)  the undesirability of the case;

11)  the nature and length of the professional relationship with the client;
     and

12)  awards in similar cases.

In re Domestic Air Transportation Litigation, 148 F.R.D. at 350 n.72. Other
factors include:  (13) the time required to reach a settlement; (14) any
objections to the fees requested; (15) any non-monetary benefits conferred
on the class; (16) the economics involved in prosecuting a class action; and
(17) any additional factor unique to the case. See Camden I, 946 F.2d at
775.

     In settlements such as the one now before the Court, which provide
both immediately payable monetary relief and future non-monetary benefits
to members of a class, the Court should award a percentage of the total

economic value of the settlement. See Camden I, 946 F.2d at 723-725; Mills v. Electric Autowhite Co., 396 U.S. 375, 392 (1970) (fees can be awarded whether or not a monetary recovery is produced); Arenson v. Bd. of Trade of City of Chicago, 372 F.Supp. 1349 (N.D. Ill. 1974) (attorneys' fees based on $800,000,000 value of injunctive relief); In re Domestic Air, supra, 148 F.R.D. 297 (attorneys' fees based on total economic value where non-monetary benefits comprised 80% of the total benefit to the class).

The $60,624.12 in reimbursable expenses and attorneys' fees sought by Class Counsel is less than 11% of the $550,000.00 cash fund. It is an even smaller percentage of the potential total settlement value of $2.6 million projected by Plaintiffs' expert economist. See generally, Daniels' Affidavit, Appendix, Tab "5". Litigation expenses exceeded $10,500.00 at the time Class Counsel applied for the award, and those expenses might increase slightly as the settlement is fully administered. See Tomlinson Affidavit, Appendix, Tab "1". See also In re Domestic Air, 148 F.R.D. at 351 (calculating reasonable percentage after deducting expenses).

The amount sought by Class Counsel and awarded in the Final Approval Order is well below the 20-30% range approved by the authorities, and it is well below the 25% benchmark. In addition, the Johnson and Camden I factors support Class Counsel's Application and this Court's award.

6

As referenced earlier, "[t]he most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel." In re Domestic Air, 148 F.R.D. at 351. See also Camden I, 946 F.2d at 771, 774-75. The "result" includes both monetary and non-monetary benefits. See Camden I, 946 F.2d at 771, 774-75, citing H. Newberg, Attorney Fee Awards, § 2.07 at 47 (1986) (hereafter "Newberg"). The efforts of Class Counsel have created a common fund of $550,000.00 and a total settlement value of approximately $2.6 million dollars.  Each and every class member who makes a claim will receive payment.[2]   Class members will receive approximately between $3.50 and $10.00 per claim, which payment is based upon the maximum amount a creditor could charge at the time in the states of Georgia ($3.50 - $10.00), South Carolina ($6.00 - $8.00) or North Carolina ($5.00 - $8.00) for non-filing insurance.

Because the money allocated to persons who cannot be located or who opt out remains in the fund to be distributed pro rata, the amount each class member will receive will increase up to a maximum of four times the

---

[2] In Affidavits prepared by Barbara Heald and Wayne Pines of The Garden City Group, Inc., which is administering the settlement, Garden City reported no timely exclusions.  There has been only one submission that might arguably be called an objection, and that objection was not to the terms of the settlement or to attorneys' fees, but rather, was to the claimant's opportunity to seek multiple payments.  That objection has been mooted.

total number of qualifying non-filing insurance fee charges. The Court finds the above methodology, as elaborated on in the Settlement Agreement, to be a reasonable and proper manner in which to reach a settlement.

For the next five years, neither Furniture Distributors nor the Kimbrell's entities shall charge any customer for non-filing insurance fees. See Settlement Agreement at ¶2.C. This future benefit to the class and to the Defendants' other customers is very valuable. See generally, Daniels' Affidavit, Tab "5" (opining that the future value over the next five (5) years could be as much as $2.1 million).

The settlement represents a meaningful recovery for class members for their past losses and ensures fair and informed treatment in the future. Continued litigation always entails risks and additional time and expense. Those risks could well have resulted in no recovery for any class member. This case has been litigated for some ten years. Intervening appellate decisions and an interlocutory appeal increased the risks in this action. The settlement is a good result for the class and brings this difficult litigation to an end.

This litigation involved the efforts of numerous lawyers from the law firms of Pope McGlamry and the Vines firm (originally Edmond & Vines, now Vines & Waldrep), as well as attorney Stephen Carter. Class Counsel have significant experience in complex litigation and class actions and significant

8

experience in non-filing insurance fee litigation. The effort expended by Class Counsel included pre-filing investigations, formal and informal discovery, legal and factual research, extensive motions practice, appeals, and intense and extended negotiations. Less diligent efforts might well have resulted in a result unfavorable to the Plaintiff class. A significant amount of time has been and will be expended in the supervision and administration of the settlement. Class Counsel's planning, execution, effort and expenses support the Court's award.

This action involved novel and difficult issues and required considerable professional skill, experience and ability. From the outset, the Plaintiff and her counsel set out to eliminate an industry-wide practice. Plaintiff and Class Counsel had to manage a transfer by the Judicial Panel on Multidistrict Litigation, consolidation with 19 other cases, coordinated discovery, dozens of dispositive motions, voluminous discovery, appeals, changing law and circumstances, and determined adversaries. The Stipulation included in the Appendix as Tab "7" provides a snapshot of the MDL cases and of this case involving Furniture Distributors and Kimbrells. It is clear from that and other evidence and from argument that this action involved difficult issues and hundreds of hours of lawyer time. In addition, this Court has reviewed the MDL Court's July 12, 2001 Memorandum Opinion which is included in the Appendix at Tab "6". That Opinion has

provided this Court with significant background and insight into the issues in the case (or cases) and into the efforts and successes of Class Counsel.  The ultimate result of Plaintiff and Class Counsel's efforts is the correction of a creditor and an insurance industry practice.

"The standing and prior experience of Plaintiff's counsel are relevant in considering applications for counsel fees."  Ressler v. Johnson, 149 F.R.D. 651, 655 (M.D. Fla. 1992).  The quality of the opposition is also relevant. Id.  Class Counsel are recognized as leading and skillful practitioners in the field of complex litigation and class actions, and they have been involved in and been successful in concluding numerous such actions. See Tomlinson Affidavit, Appendix, Tab "1".  The Defendants here, and their attorneys, who are experienced advocates and leading members of the Birmingham, Alabama legal community, were and are worthy opponents.  The experience and ability of Class Counsel were brought to bear on the difficult legal issues involved here and on the complex and extensive factual development.  Class Counsel's ability, experience, skill and reputation support this Court's award of attorneys' fees.

Class Counsel's commitment to this and to the other non-filing insurance fee cases clearly precluded other employment.  "This factor involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the

representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." Bowen v. SouthTrust Bank of Alabama, N.A., 760 F.Supp. 889, 897 (M.D. Ala. 1991) (citation omitted). Pope McGlamry is very experienced, but numerically small. The Vines firm likewise is a smaller firm. Many of Pope McGlamry's attorneys, including its most senior and experienced attorneys, worked on this case. Similarly, the Vines firm committed the time and efforts of several attorneys, including one of its more senior and experienced attorneys. See Tomlinson Affidavit, Appendix, Tab "1"; Vines Affidavit, Tab "4". Pope McGlamry represents individual plaintiffs in complex litigation and depends almost entirely upon contingent fee work. The quid pro quo for Class Counsel's decision to undertake complex class action litigation like this action is that other cases, which would have a more assured remuneration, must be rejected.

These attorneys and individuals accepted this case for as long as it took to obtain a favorable result. In this case, that took ten years. Other representation simply could not be accepted if Plaintiff and the plaintiff class were to be vigorously and zealously represented. Reference to the Affidavits and/or Declarations reveals the extraordinary commitment these attorneys made to this action. It also shows that certain other matters that otherwise might have been considered and accepted were refused because the

manpower and other resources were simply not available. Consumer litigation oft times involves small amounts of loss to any individual. Absent the availability of the class action device, and attorneys' willingness to accept the risks associated with such litigation, many persons would go without representation and many wrongs would go without recourse, resulting in large financial windfalls to the wrongdoer. It is not practical for attorneys to represent individuals in lawsuits against defendants like those here for the relatively small amount of money at stake. See generally Deposit Guaranty National Bank v. Roper, 445 U.S. 326 (1980). However, if class actions can be pursued, and if attorneys who represent the class zealously and successfully can be adequately and well-compensated, such actions can be brought and successfully prosecuted for the benefit of the Plaintiff class. Class Counsel here chose to accept the risk and to forego other more certain litigation and work. Now that Class Counsel has obtained such a meaningful result, the Court is of the view that they should be compensated adequately.

Courts must determine the amount of fees to which plaintiff's counsel are entitled in class action cases like this one. See Fed.R.Civ.P. 23. See also Camden I, supra. In the Eleventh Circuit, such fees generally fall within the 20 to 30 percent range, with a benchmark of 25 percent. See Camden I, supra, 946 F.2d at 775. See also discussion supra. Thus, Class Counsel's

12

fees are in the nature of contingent fees and must be set and/or approved by this Court. See In re Domestic Air, 148 F.R.D. at 356; Ressler, 149 F.R.D. at 654-655; Deposit Guaranty Nat. Bank v. Roper, supra, 445 U.S. 326, 338.

Class Counsel took this case on a contingent fee arrangement with no assurance of success and therefore no assurance of any payment or even of any reimbursement for the expenses that were certain to be incurred. This action was filed in 1995. Class Counsel vigorously litigated this case through the MDL process and through an appeal to the Eleventh Circuit. Whether a class could be upheld to seek and recover past damages, either by equitable or legal means, was unknown. This matter involved relatively small individual damages, and but for the procedural vehicle of Rule 23, it likely would not have been litigated. Class Counsel accepted and committed to this case, and the enormous and skillful work done on behalf of the class has produced extraordinary results. Class Counsel seek relatively modest fees for their efforts, applying for $50,000.00 in fees and $10,624.12 in reimbursable expenses.

The Court has considered other class action cases and the awards made therein. See, e.g., In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Fire Litigation, 56 F.3d 295 (1st Cir. 1995); In re Domestic Air Transportation Antitrust Litigation, 148 F.R.D. 297 (N.D. Ga. 1993);

Mashburn v. National Healthcare, Inc., supra, 684 F.Supp. 679; In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, MDL-150 AWT (C.D.Cal); In re Combustion, Inc., 968 F.Supp. 1116, 1139 (W.D.La. 1997); In re Infant Formula Antitrust Litigation, MDL No. 878 (N.D.Fla. Sep. 7, 1993); In re Saloman Brothers Treasury Litigation, No. 91 Civ. 5471 (RPP) (S.D.N.Y. August 5, 1994); Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 640 F.Supp. 697 (S.D. Ohio 1986). The attorneys' fees sought and awarded in this case of less than 10% of the immediately payable monetary fund and an even smaller percentage of the total settlement value compare very favorably with those fees awarded in these other cases.

In this class action case, Class Counsel will be compensated, if at all, like in a contingent fee case, that is, only upon achieving a successful result. That successful result has been achieved. This factor therefore supports the award sought by Class Counsel here. The award the Court approves is within the range of customary fees awarded for actions of this type and size.

Class Counsel has labored long and effectively to bring this matter to a successful conclusion. The Defendants were highly motivated to prevail, as the years of litigation clearly show. After oral argument before the Eleventh Circuit, Class Counsel and counsel for the Defendants assessed the risks of continued litigation and proceeded toward settlement promptly. Class

Counsel's litigation strategy and its proactive efforts avoided not only the risks and expenses associated with further litigation but also the expenditure of other scarce judicial resources. Class Counsel and defense counsel did a good job resolving this matter fairly, efficiently and expeditiously. This factor supports the Court's award.

Class Counsel knew when accepting this case that long term and hard fought litigation was possible. That proved to be true. Plaintiffs had secured certification of a class, but that certification was under attack on appeal. If Plaintiffs had prevailed in the Eleventh Circuit and obtained either a favorable jury verdict or court decision, affirmance of same on appeal was not a foregone conclusion. Aware of these difficulties, Class Counsel had to commit to the case and to bearing the expense associated with it, knowing that the time and expense might prove to be unrecoverable. Few firms take on large class action litigation because of the required commitment of time and resources and the attendant risks of long and difficult and unsuccessful litigation. Class Counsel made that commitment. This factor supports the award of attorneys' fees.

Considering the difficulties involved, the matter was litigated as expeditiously as possible, and once settlement became an option, it was reached in a swift and efficient manner. Such settlement provides substantial and immediate benefits to the class and avoids the expense and

delay associated with protracted litigation, including any trial and appeal therefrom. The law favors settlement, and the percentage of the fund approach to attorneys' fees in class actions was adopted in this Circuit to encourage early settlements in common fund cases. See Camden I Condominium, supra. This factor supports the Court's award.

Class Counsel met with Plaintiff LaShonda Hazzard and associate counsel Stephen Carter and agreed to represent Plaintiff and all others similarly situated in this action. Class Counsel consulted with Plaintiff regarding the facts and worked with her to obtain information and documents, to propound discovery, to move for and support class certification, declaratory judgment and partial summary judgment, and to negotiate a settlement. Class Counsel met with and advised Plaintiffs of significant developments as they occurred. This factor supports the Court's award. See generally Hazzard Affidavit, Tab "2"; Carter Affidavit, Tab "3".

As discussed above, this settlement involves immediately payable benefits and future non-monetary benefits. The Court finds these future non-monetary benefits significant. The cessation of the practices here involved appears to be a prime example of what class actions can accomplish. Based on the applicable law, these future benefits properly are considered in reaching the total value of the settlement.

16

Another factor relates to the "economies of scale" involved in the

prosecution of a class action, In re Domestic Air, 148 F.R.D. at 351-352,

and "also implicates the Johnson contingent fee factor". Ressler, 149 F.R.D.

at 656-657. In Mashburn v. National Healthcare, Inc., Judge Dubina stated

the following when discussing this factor:

> In the past, some courts have lowered fees to attorneys who
> achieved a quick result in a class action due to the economies
> of scale inherent in any class action, and due to the very nature
> of the lodestar and Johnson approaches.   Some also have
> reasoned that there is little additional time or effort required to
> litigate a class action; accordingly, the plaintiffs' attorney
> should not be allowed to receive a contingent fee payable out of
> the entire fund at the same rate that he would receive a fee
> payable from one claim.
>
> Because the normal 20% to 30% range of fee percentages
> awarded in securities common fund cases already reflects this
> economy of scale, there is no need for downward adjustment of
> any fee request which falls within the normal 20% to 30%
> range simply because little time was expended on the case.
> One of the reasons for supporting a percentage fee award is to
> encourage early settlement of cases.     See H. Newberg,
> Attorney Fee Awards, § 2.07 at 48-51.   (Cf., the level of
> contingent fee generally established in the marketplace for legal
> services is approximately 1/3 of the recovery for traditional
> commercial or personal injury claims). Id. at 49.
>
> As is discussed in the Third's Circuit Task Force Report, an
> award of fees based on an hourly or lodestar rate only
> encourages plaintiffs' attorneys to prolong litigation in order to
> "milk" as much of a fee as possible out of a case.  Allowing a
> percentage fee award allows the attorneys involved to
> concentrate their efforts solely on achieving a high rate of
> return for their clients and the class, which in turn raises
> counsel's own fee, instead of devoting their efforts to putting
> enough hours into the case to generate a sizable fee without
> concern for the best interests of the class members.

> In the instant case, the requested fee (which is in fact below the thumb-rule range of 20% to 30%) already has taken into consideration the fact that due to the economies of scale inherent in a class action, the percentage fee awarded should be less than that awarded in personal injury or commercial contingent fee cases.

Mashburn, 684 F.Supp. at 695.

The percentage of the immediately payable monetary fund and/or the total settlement value awarded as fees and expenses in this case is less than the percentage customary in most contingent fee agreements. Thus, it already reflects the economy of scale referenced in Mashburn and in other cases.

The authorities show that the requested attorneys' fee is well within the range of reasonableness in cases of the size involved in this settlement. This case was prosecuted by Class Counsel on a purely contingent fee basis and, as the former Fifth Circuit recognized in Jones v. Diamond, 636 F.2d 1364, 1382 (5th Cir. 1981), "[l]awyers who are to be compensated only in the event of a victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." See also Jones v. Central Soya Co., 748 F.2d 586, 591 (11th Cir. 1984) (same); Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir. 1980) (same). Class Counsel have demonstrated that the requested attorneys' fee is fair and reasonable. This factor supports the Court's award.

Federal Rule of Civil Procedure 23, and by extension O.C.G.A. § 9-11-23, "requires court approval of any settlement of a class action suit and squarely places the court in the role of protector of the rights of the class when such a settlement is reached and attorneys' fees are awarded." In re "Agent Orange" Product Liability Litigation, 818 F.2d 216, 222 (2nd Cir. 1987), cert. denied, 484 U.S. 926 (1987). "In considering a fee award in the class action context, the district court has a significant supervisory rule. Federal Rule of Civil Procedure 23(e) mandates that a 'class action shall not be dismissed or compromised without the approval of the court.'" Waters v. International Precious Metals Corp., 190 F.3d 1291, 1293 (11th Cir. 1999) (quoting Fed.R.Civ. P. 23(e). The trial court bears this responsibility, and has broad discretion in determining the amount of a fee award, in view of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley v. Eckerhart, 461, U.S. 424, 437 (1983).

This Court also bears the responsibility of allocating any attorneys' fee award in a class action case. This responsibility is based on Rule 23, on the Court's supervisory authority over class actions and class action settlements, on the Court's equitable powers, and as the protector of the absent class' interests. See Camden I, supra; Waters, supra; Smiley v. Sincoff, 958 F.2d 498 (2nd Cir. 1992); In Re Agent Orange Product Liability Litigation, supra;

In re FPI/Agretech Securities Litigation, 105 F.3d 469 (9th Cir. 1997); In re Domestic Air Transportation Antitrust Litigation, 148 F.R. D. 297 (N.D. Ga. 1993). The Settlement Fund, and indeed this class action, is a res over which this Court has exclusive jurisdiction. See Wesch v. Folsom, 6 F.3d 1465, 1470 (11th Cir. 1993).

In furtherance of the Court's jurisdiction and supervisory role over this class action settlement, the Court has reviewed the Application of Class Counsel. No other applications were presented. Based on the Application of Class Counsel, and on the recommendation of lead counsel Pope McGlamry with the agreement of the Vines firm and Stephen Carter, the Court approves the following allocation: 1) Expenses be reimbursed and paid from the $ 60,624.12 award; and 2) $50,000.00 of the remainder after reimbursement of expenses to be paid to Class Counsel to be paid to Mr. Carter. This allocation is supported by the Application and Appendix in Support and the other filings of Plaintiffs and Class Counsel. In addition, the Court accepts the recommendation of Class Counsel and Lead Counsel Pope McGlamry in this regard. See In re Domestic Air Transportation Antitrust Litigation, 148 F.R.D. 297, 357 (N.D. Ga. 1993) (ideally, allocation of fee award is a private matter to be handled by class counsel).

## **CONCLUSION**

Class Counsel's Application is hereby granted. Class Counsel performed exceedingly well for the Plaintiff Class and achieved an outstanding result. Upon the Final Approval of this Settlement, as set forth in the Stipulation of Settlement and in the Final Order and Judgment filed on $\underline{May\ 17}$ , 2005, the amount of $\$\underline{60,624.12}$ shall be paid to the Trust Account of Pope McGlamry for allocation as set out above.

**IT IS SO ORDERED** this $\underline{17}$ day of May, 2005.

Wilbur L Owens, Jr

Honorable Wilbur B. Owens
Judge, United States District Court,
Middle District of Georgia

21